IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Sara E. Siegler, | : | |
| Plaintiff | : | Civil Action 2:11-cv-170 |
| v. | : | |
| The Ohio State University, *et al.*, | : | Magistrate Judge Abel |
| Defendants. | : | |

**OPINION AND ORDER**

On May 23, 2011, the Magistrate Judge issued an initial screening Report and Recommendation on this matter, pursuant to 28 U.S.C. §1915(e)(2). (Doc. 10.) On June 6, 2011, Plaintiff filed objections to this initial screening. (Doc. 23.) On June 13, 2011, Defendants filed objections as well. (Doc. 27.) Upon the parties' consent, this case was then referred to the Magistrate Judge for all further proceedings. (Doc. 42.) Defendants subsequently refiled their objections as a motion to dismiss. (Doc. 46.)

This matter is before the Court on Defendant's July 8, 2011 motion to dismiss.[1] The initial screening recommended the dismissal of all of Plaintiff's claims, except for claims under 42 U.S.C. §1983 for retaliation for exercise of First Amendment rights against Defendants Daniel C. Rohrer, Laurie Ann Johnson,

---

[1] The factual averments in Plaintiff's complaint are summarized at length in the initial screening Report and Recommendation of May 23, 2011. (Doc. 10.)

1

Katrina Muska Duff, and Olga Esquivel-Gonzalez, and for an uncompensated taking in violation of the Fifth Amendment against Defendant Leona B. Ayers.  In the motion to dismiss at bar, the remaining defendants argue that these claims should be dismissed pursuant to Fed. Rs. Civ. P. 12(b)(1) and (6).[2]

**First Amendment retaliation**.  The United States Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007).  The United States Court of Appeals for the Sixth Circuit has explained:

> The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." [*Twombly*] at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted).

*Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007).  The claims must be plausible and not merely conceivable.  *Twombly*, 127 S. Ct. at 1974.

To prove a claim of retaliation in violation of the First Amendment, an employee must establish:

---

[2] The Court adopted the initial screening with respect to all other defendants in its Order of September 16, 2011.  (Doc. 90.)  Movants here are the only remaining defendants in this action.

2

> (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Farmer v. Cleveland Public Power*, 295 F.3d 593, 599 (6th Cir. 2002); *see also Lucas v. Monroe County*, 203 F.3d 964, 973 (6th Cir. 2000).

Plaintiff was formerly employed as a Clinical Research Data Coordinator by former defendant The Ohio State University, in its Cancer and Leukemia Group B (CALGB) program at the Pathology Coordinating Office ("PCO"). In her complaint and accompanying "whistleblower narratives", Plaintiff stated that CALGB used a standardized database system called RIMS, promoted by the National Institutes for Health. However, she alleged, Versions 1 and 2 of RIMS were of very limited use, requiring PCO employees to maintain data in ordinary spreadsheets as well. Plaintiff alleged that she made several reports or complaints that RIMS was not properly functional or being used as intended. Finally, on September 22, 2008, Plaintiff sent an email to Laurie A. Johnson ("Johnson"), the OSU Pathology Director of Operations, and Dr. Scott Jewell, Plaintiff's superior, advising them that she and her colleagues were not able to properly utilize RIMS and were forced to still keep records by spreadsheet. However, on October 14, 2008 meeting with the National Cancer Institute, a funding agency, Dr. Jewell listed utilization of RIMS as one of the center's specific objectives and future plans. Plaintiff then contacted RIMS software developers at Duke University, advising them that OSU was not

making proper use of RIMS.

Plaintiff received a written reprimand from Defendant Daniel C. Rohrer ("Rohrer"), the PCO Data Manager, in April 2008 for sending an email to coworkers complaining that they were wasting her time and failing to properly perform their jobs, and met several times with Johnson and Rohrer subsequently concerning her work performance.  In October 2008, Plaintiff learned that co-workers had complained about her to Johnson, and she approached Defendant Katrina Muska Duff ("Duff"), the human resources consultant for the OSU Department of Pathology, to inquire about the substance of the complaints.  Later that month, she received two further written reprimands.  On November 3, 2008, Plaintiff met with Duff in her office concerning complaints about her.  Duff sent Plaintiff a follow-up email informing her that a request for corrective action was forthcoming, but that the Pathology Department would permit her to resign in lieu of termination.

In her complaint, Plaintiff stated that she felt that her job was being threatened because of having revealed PCO's failure to utilize RIMS.  In December 2008, she sent an OSU Whistleblower Report Form to the OSU Office of Research.  However, on December 19, 2008, Plaintiff was placed on administrative leave by Johnson and Rohrer.  Finally, on February 25, 2009, Plaintiff participated in a telephone conference call with Rohrer, former defendants Michelle Geiman and Stephanie Berland, and Defendant Olga Esquivel-Gonzalez ("Gonzalez"), a manager in OSU's Office of Human Resources, in which Rohrer advised her that her employment was being terminated.

According to Plaintiff's complaint, she was terminated in retaliation for having reported misuse of, or failure to use, the CALGB RIMS system. Plaintiff asserts that this makes her a whistleblower for purposes of state and federal statutes, and that it gives rise to an actionable claim for First Amendment retaliation. However, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983). A government employee retains her First Amendment right to comment on matters of public concern without fear of reprisal from the government as employer. *Dambrot v. Central Michigan University*, 55 F.3d 1177, 1185 (6th Cir. 1995), citing *Connick*, *supra*. However, the threshold question is whether the employee's speech may be fairly characterized as constituting speech on a matter of public concern. *Id.*, quoting *Matulin v. Village of Lodi*, 862 F.2d 609, 612 (6th Cir. 1988). "[C]omplaining about your boss and coworkers is not protected by the First Amendment just because you work for the government... [C]omplaining about the poor management of... [a] university is not a matter of public concern when those complaints are directed only to other government employees and concern the employee's supervisors and coworkers." *Feterle v. Chowdhury*, 148 Fed.Appx. 524, 533 (6th Cir. 2005). Criticism of one's colleagues and department is not of itself constitutionally protected speech. *Id.*

Here Plaintiff characterizes, or seems to characterize, her complaints concerning RIMS as exposure of wrongdoing.  However, it is not clear exactly what wrong it is that Plaintiff is supposed to have exposed.  Her complaint alleged that she brought it to the attention of her superiors that RIMS functioned poorly and could not be used, and that she contacted the developers of RIMS to advise them that OSU was not making proper use of their software.  Plaintiff also mentioned that Dr. Jewell had at one point made reference to the use of RIMS as a goal for CALGB.  Her allegations, even if they were all accepted as true, would not demonstrate any kind of fraud upon the public sufficient to give rise to a claim that a plaintiff had "blown the whistle" on governmental wrongdoing rather than simply complained about internal mismanagement.

Furthermore, Plaintiff's complaint does not offer more than conclusory allegations that she suspected that her termination was really in retaliation for her exposure of problems with RIMS, rather than the result of the numerous written and verbal reprimands which, according to her complaint, she received for quarreling with her coworkers.  The complaint pleads only vague suspicion that Plaintiff's termination must have been due to her speech concerning RIMS.  However, a complaint will not "suffice if it tenders 'naked assertion[s] devoid of further factual enhancement.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), quoting *Twombly*, 550 U.S. at 555, 557 (citations omitted).  Plaintiff does not suggest the existence of any facts which, if she could prove they were true, would demonstrate "that the adverse action was motivated at least in part as a response to

6

the exercise of the plaintiff's constitutional rights", rather than merely an unfair, unwarranted, or unjustified employment decision. Consequently, Plaintiff has failed to state a claim for First Amendment retaliation upon which relief can be granted.

**Fifth Amendment taking**. In her complaint, Plaintiff alleged that she "proposed an idea for a research proposal to Dr. Jewell with the assistance of Mr. Rohrer in a private meeting held between the three." She alleged that she repeatedly submitted her ideas, which concerned new techniques for the use of specimens in lymphoma research, by email to Jewell and Rohrer, and that they responded with suggestions and comments. Siegler, who asserts that she produced her ideas on her own time rather than at work, apparently did not create a formal research product based upon this proposal prior to her termination. However, Defendant Dr. Leona Ayers ("Ayers"), another researcher in the OSU Department of Pathology, allegedly plagiarized Plaintiff's research material and included it in a presentation at a conference in South Africa in September 2010.

The Fifth and Fourteenth Amendments to the United States Constitution prohibit the taking of private property for public use without just compensation. The initial screening Report and Recommendation previously identified that Plaintiff, in making these allegations against Ayers, sought to bring a claim under 42 U.S.C. §1983, the statute creating a private right of action for violation of civil rights. Soon after filing her complaint, Plaintiff filed a "Notice of Constitutional Question" and a motion to certify this constitutional question. In her notice, she

reiterated her allegations that Dr. Ayers had plagiarized her research, and stated:

> Although OSU has claimed ownership of Siegler's research from 2008, which includes, but is not limited to the lymphoma research proposal that Siegler wrote in her spare time off of work, under the federal Bayh-Dole Act, which constitutes an[] Act of Congress, Siegler questions the constitutionality of the federal Bayh-Dole Act, which grants universities ownership of intellectual property developed via the use of federal funds... [and] O.R.C. § 3345.14, which constitutes Ohio's work product statute...

(Doc. 6 at 3.) The Court later denied Plaintiff's requests that it serve her Notice of Constitutional Question upon the United States and Ohio Attorneys General, stating:

> Plaintiff's complaint, construed most broadly, can be taken to imply that employees of Ohio State University took her intellectual property and misappropriated it for their own use (or for the University's use) without giving her credit. Plaintiff's request that the Court declare these statutes unconstitutional under the Fifth Amendment is founded not upon an assertion by Ohio State University or a finding by a court that Plaintiff did not own certain property, but upon Plaintiff's anticipation that Defendants would, if challenged, invoke these statutes to justify their position. This is a hypothetical injury. Since no one has actually invoked O.R.C. §3345.14 or the Bayh-Dole Act against her, Plaintiff has no standing to attack them.

(Doc. 79 at 2, quoting *Siegler v. The Ohio State University*, Case No. 2:10-cv-172, Doc. 79 at 9-10.) It further noted that "Plaintiff does not have standing to challenge the constitutionality of statutes which no defendant has invoked against her. The Court will accordingly not certify any such challenge". (*Id.*)

In Defendants' motion to dismiss, they now argue that Plaintiff fails to allege that she was deprived of any property of hers without due process of law:

> Notwithstanding the question of whether Siegler's "proposal" is original in any way whatsoever, or even remotely rises to the level of

8

> viable research with any academic and/or monetary value at all, O.R.C. §3345.14 provides that all rights to inventions, discoveries, and patents resulting from a state university research facility becomes the property of that university. Additionally, the "Bayh-Dole Act", 35 U.S.C. § 201 *et seq.* gives universities control of intellectual property arising from federally funded research.

(Doc. 46 at 15-16.) Defendants argue that, under the Fifth Amendment, a government is not required to compensate an owner for property lawfully acquired under the exercise of government authority other than eminent domain, and that Plaintiff would therefore not have been deprived of her intellectual property without due process of law.

As Defendants have, in fact, invoked O.R.C. §3345.14 and the Bayh-Dole Act to argue that whatever taking they might have imposed upon Plaintiff was legal, Plaintiff does have standing to challenge the constitutionality of these statutes. Pursuant to Fed. R. Civ. P. 5.1(b) and (c), the Court must notify the Attorney General of the United States that the constitutionality of a federal statute has been called into question, and permit him sixty days to intervene in this action.[3]

The Court accordingly will not adjudge at this time the question of whether Plaintiff's allegations against Dr. Leona Ayers for an unconstitutional taking of property state a claim upon which relief can be granted, and Defendants' motion to dismiss in this respect will be denied without prejudice.

**Conclusions**.  For the reasons set forth herein, Defendants' motion to dismiss

---

[3] The Court need not certify this question to the Ohio Attorney General, as the State of Ohio is already a party to this action. Fed. R. Civ. P. 5.1(a)(1)(B).

(Doc. 46) is **GRANTED IN PART** and **DENIED WITHOUT PREJUDICE IN PART**. Plaintiff's claims against Defendants Laurie Ann Johnson, Daniel C. Rohrer, Katrina Muska Duff, and Olga Esquivel-Gonzalez are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Furthermore, pursuant to Fed. R. Civ. Pro. 5.1(b) and 28 U.S.C. §2403(b), the Court hereby **CERTIFIES** to the Attorney General of the United States that the constitutionality of the Bayh-Dole Act, 35 U.S.C. § 201 *et seq.* under the Fifth Amendment to the United States Constitution has been drawn into question. The Attorney General of the United States may intervene for presentation of evidence, where applicable, and for argument on the question of constitutionality, by **Friday, December 2, 2011**.  Plaintiff is required to abide by her obligations under Fed. R. Civ. P. 5.1(a)(2).

The Clerk of Court is **DIRECTED** to serve a copy of this Order upon the Attorney General of the United States, United States Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001, and upon the United States Attorney for the Southern District of Ohio.

The Court hereby establishes a deadline of **Friday, December 16, 2011**, for the filing of any motions to dismiss pursuant to Fed. R. Civ. P. 12.  The Court will thereafter establish a revised case management schedule.

s/Mark R. Abel  
United States Magistrate Judge